NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4357-15T1

Y.G.P.1

 Plaintiff-Appellant,

v.

A.H.R.,

 Defendant-Respondent.

________________________________

 Submitted April 26, 2017 – Decided July 21, 2017

 Before Judges Fuentes, Carroll and Farrington.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Middlesex
 County, Docket No. FD-12-1542-16.

 Cella & Associates, LLC, attorneys for
 appellant (Robert K. Valane, on the brief).

 Respondent has not filed a brief.

PER CURIAM

 Plaintiff Y.G.P. is the biological mother of R.H.G., an

eleven-year-old girl who was born in Mexico. Defendant A.H.R. is

1
 We use initials to protect the confidentiality of the parties.
See R. 1:38-3(d)(10).
the child's biological father. Plaintiff filed this action in the

Family Part to permit the court to make "the predicate findings

necessary for a non-citizen child to apply for 'special immigrant

juvenile' (SIJ) status under the Immigration Act of 1990, as

amended by the William Wilberforce Trafficking Victims Protection

Reauthorization Act of 2008 (TVPRA), Pub. L. No. 110–457, 122

Stat. 5044." H.S.P. v. J.K., 223 N.J. 196, 199–200 (2015). As

the Supreme Court explained in H.S.P., "SIJ status is a form of

immigration relief permitting alien children to obtain lawful

permanent residency and, eventually, citizenship." Id. at 200.

 To achieve this end, the juvenile-applicant must complete a

two-step process:

 [F]irst, the juvenile must apply to a state
 court for a predicate order finding that he
 or she meets the statutory requirements;
 second, he or she must submit a petition to
 United States Citizenship and Immigration
 Services (USCIS) demonstrating his or her
 statutory eligibility. 8 C.F.R. § 204.11
 details the findings that must be made by a
 juvenile court before an alien's application
 for SIJ status will be considered by USCIS[.]
 [I]n addition to a series of factual
 requirements, the juvenile must demonstrate
 that reunification with "1 or both" of his or
 her parents is not viable due to abuse,
 neglect, or abandonment. The court is then
 required to determine whether it is in the
 juvenile's best interests to return to his or
 her home country.

 [Ibid.]

 2 A-4357-15T1
 The Supreme Court emphasized in H.S.P. that "[t]he Family

Part's sole task is to apply New Jersey law in order to make the

child welfare findings required by 8 C.F.R. § 204.11." Ibid. In

performing this function, the Family Part must apply "its expertise

in family and child welfare matters to the issues raised in 8

C.F.R. § 204.11, regardless of its view as to the position likely

to be taken by the federal agency or whether the minor has met the

requirements for SIJ status." Id. at 200–01.

 Here, in addition to her sworn statements in the verified

complaint, plaintiff certified that R.H.G. was eleven years old

when she clandestinely entered the United States from Mexico in

January 2015. Thus, R.H.G. does not have an officially sanctioned

immigration status, and she is subject to deportation. R.H.G.

currently resides with plaintiff in Middlesex County, where she

attends a local public school. Plaintiff claims the child is

doing well socially and academically. R.H.G. wants to continue

her education and attend college in this country if legally

permissible.

 In a certification submitted to the Family Part, plaintiff

averred she is

 personally acquainted with the current
 economic problems plaguing [R.H.G.'s]
 biological father, and he has expressed his
 inability and unwillingness to properly care
 for her in Mexico.

 3 A-4357-15T1
 When [R.H.G.] resided in Mexico with her
 father, she did not have adequate food,
 clothing, shelter or medical care. Her father
 simply could not afford to provide these
 necessities for her. He was also extremely
 abusive towards her. There is no question
 this neglect and abuse would continue if she
 were to return to Mexico to live with her
 father.

By contrast, since R.H.G. began living with plaintiff, she has

received proper food, clothes, and shelter and has excelled

socially and academically. Plaintiff fears the progress R.H.G.

has made can be quickly undone if she returns to her father's

custody. Plaintiff petitioned the Family Part to award her custody

of her daughter and to find it is not in R.H.G.'s best interest

to return to Mexico. Plaintiff also urged the Family Part to find

that if the child is returned to her father's custody in Mexico,

it is highly probable she will be abused, neglected, and abandoned,

and will have "limited academic and professional possibilities."

 The Family Part decided plaintiff's petition without

conducting an evidentiary hearing. Relying exclusively on the

facts described in plaintiff's verified complaint and supplemental

certification, the court entered an order "DEN[YING] WITHOUT

PREJUDICE" what it characterized as "plaintiff's motion for

[R.H.G.] . . . to be declared a dependent upon the Juvenile Court

of the State and eligible for long term foster care[.]" The court

 4 A-4357-15T1
found R.H.G. was not "abandoned by her biological parents pursuant

to N.J.S.A. 9:6-1." In reaching this conclusion, the Family Part

cited this court's opinion in H.S.P. v. J.K., 435 N.J. Super. 147,

164–65 (App. Div. 2014), which focused on whether a juvenile was

eligible for SIJ status based on 8 U.S.C.A. § 1101(a)(27)(J). Our

opinion was reversed by the Supreme Court in H.S.P., supra, 223

N.J. at 201.

 Plaintiff filed this appeal on June 13, 2016. As authorized

by Rule 2:5-1(b),2 the trial judge submitted a letter-opinion to

this court "to supplement the record regarding the issues now

being appealed." After briefly summarizing the allegations in

plaintiff's verified complaint, the judge stated: "Applying the

standard set forth in 8 U.S.C.A. § 1101(a)(27)(J) and its

implementing regulation[,] 8 C.F.R. § 204.11, this [c]ourt found

that the child did not meet the statutory requirements to be a

special immigrant juvenile." The judge acknowledged that our

Supreme Court held the Family Part does not have jurisdiction "to

grant or deny applications for immigration relief." See H.S.P.,

supra, 223 N.J. at 200. The judge nevertheless stated that based

2
 Within fifteen days of the filing of an appeal, Rule 2:5-1(b)
permits a trial judge "to file and mail to the parties an
amplification of a prior statement, opinion or memorandum made
either in writing or orally and recorded pursuant to [Rule] 1:2-
2."

 5 A-4357-15T1
on plaintiff's "submissions, it found that [R.H.G.] had not been

abandoned, abused or neglected by her mother, the plaintiff." In

the judge's view, the underlying premise of plaintiff's claim was

that "economic and academic opportunities are better here" than

in Mexico. The judge held this was not "a sufficient basis to

find the child dependent on this [c]ourt and eligible for long-

term foster care."

 In this light, the judge found an evidentiary hearing was not

necessary to determine "whether it would be in the child's best

interest to return to her country of origin." According to the

judge, judicial economy favored deciding this case "based on the

evidence set forth in [p]laintiff's [c]ertification." Plaintiff

argues on appeal that the Family Part's final ruling, as reflected

in its April 29, 2016 order, was inconsistent with the Supreme

Court's holding in H.S.P., supra, 223 N.J. 196. Independent of

this error, plaintiff argues the court erred in making factual

findings without conducting an evidentiary hearing. We agree and

reverse.

 We start our analysis by reaffirming a fundamental tenet of

appellate jurisprudence. "'[A]n appeal is taken from a trial

court's ruling rather than [its] reasons for the ruling.'" N.J.

Div. of Child Prot. & Permanency v. K.M., 444 N.J. Super. 325,

333–34 (App. Div.) (quoting State v. Adubato, 420 N.J. Super. 167,

 6 A-4357-15T1
176 (App. Div. 2011), certif. denied, 209 N.J. 430 (2012)), certif.

denied, 227 N.J. 211 (2016). Thus, in this appeal, we review the

legal viability of the Family Part's ruling as reflected in its

April 29, 2016 order. The Family Part's letter-opinion submitted

pursuant to Rule 2:5-1(b) is viewed only as "an amplification" of

the court's reasoning in support of its prior order.

 With these principles in mind, we return to the Supreme

Court's decision in H.S.P. for guidance. Writing for the Court

in H.S.P., our colleague Judge Cuff explained the Family Part is

tasked with making the following findings:

 (1) The juvenile is under the age of 21 and
 is unmarried;

 (2) The juvenile is dependent on the court or
 has been placed under the custody of an agency
 or an individual appointed by the court;

 (3) The "juvenile court" has jurisdiction
 under state law to make judicial
 determinations about the custody and care of
 juveniles;

 (4) [] [R]eunification with one or both of the
 juvenile's parents is not viable due to abuse,
 neglect, or abandonment or a similar basis
 under State law; and

 (5) It is not in the "best interest" of the
 juvenile to be returned to his parents'
 previous country of nationality or country of
 last habitual residence within the meaning of
 8 U.S.C.A. § 1101(a)(27)(J)(ii); 8 C.F.R. §
 204.11(a), (d)(2)(iii) [amended by TVPRA
 2008].

 7 A-4357-15T1
 [H.S.P., supra, 223 N.J. at 210 (citation
 omitted).]

 Here, factors (1), (2), and (3) are undisputed. R.H.G. is

under the age of twenty-one; she is not dependent on the court and

has not been placed under the custody of an agency or an individual

appointed by the court; and the Family Part has jurisdiction under

Title 9 and Title 30 to make determinations about her custody and

care. See N.E. v. State Dep't of Children & Families, 449 N.J.

Super. 379, 398–401 (App. Div. 2017). Thus, the Family Part was

required to make specific findings only as to factors (4) (whether

R.H.G.'s reunification with one or both of her parents is not

viable due to abuse, neglect, abandonment, or a similar basis) and

(5) (whether it is in R.H.G.'s "best interest" to be returned to

her parents' previous country of nationality). See H.S.P., supra,

223 N.J. at 210 (citation omitted).

 In determining whether the trial court performed this task,

we acknowledge the Family Part's "special jurisdiction and

expertise in family matters." Cesare v. Cesare, 154 N.J. 394, 413

(1998). We are bound to accept the Family Part's factual findings

on appeal, provided they are supported by adequate, substantial,

credible evidence in the record. Thieme v. Aucoin-Thieme, 227

N.J. 269, 282–83 (2016) (quoting Cesare, supra, 154 N.J. at 411–

12).

 8 A-4357-15T1
 Here, the Family Part judge found R.H.G. "had not been

abandoned by her biological parents pursuant to N.J.S.A. 9:6-1."

The unchallenged evidence plaintiff presented to the court does

not support the judge's finding. In her certification, plaintiff

affirmed under penalty of perjury that R.H.G.'s father had

abandoned and abused her. If the judge had reservations about

plaintiff's credibility, she should have conducted an evidentiary

hearing to question plaintiff directly and seek further evidence

of abandonment or abuse. Under these circumstances, a facial

rejection of plaintiff's certification is unacceptable.

 In the April 29, 2016 order, the judge also cited a section

of this court's opinion in H.S.P., supra, 435 N.J. Super. at 164–

65, in which we adopted the Nebraska Supreme Court's reasoning to

hold that a juvenile is not eligible for SIJ status if

reunification with either parent is feasible. We conclude that

in reversing our opinion in H.S.P., our Supreme Court unequivocally

rejected the analytical approach reflected in the Family Part's

April 29, 2016 order. Writing for the Court, Judge Cuff made

clear that as a matter of law, the Family Part is not competent

to decide whether a juvenile is eligible for SIJ status:

 We take this opportunity to comment on and
 clarify the limited role played by New Jersey
 State courts in the SIJ application process.
 Our review of the legislative scheme relating
 to SIJ status demonstrates that the

 9 A-4357-15T1
 determination of whether a child should be
 classified as a special immigrant juvenile
 rests squarely with the federal government.
 "Congress chose to rely on state courts to
 make [initial factual findings] because of
 their special expertise in making
 determinations as to abuse and neglect issues,
 evaluating the best interest factors, and
 ensuring safe and appropriate custodial
 arrangements."

 [H.S.P., supra, 223 N.J. at 211 (citation
 omitted).]

 Furthermore, the trial judge noted that R.H.G. "is already

thriving in the custody of her mother and there is no reason for

the [c]ourt to exercise jurisdiction other than for immigration

benefits." This statement has no relationship to any of the five

factors the Family Part is required to consider and constitutes a

misstatement of the relevant law. Under factor (4), the court

must determine whether reunification with one or both of the

juvenile's parents is not viable due to abuse, neglect,

abandonment, or a similar basis under state law. The fact that

R.H.G. may be doing well in plaintiff's custody does not address

whether she would also fare well under her father's custody.

 Based on this record, we reverse the Family Part's order and

remand for a de novo review of plaintiff's application before a

different judge to be selected by the Presiding Judge of the Family

Part. We take this measure in the interest of justice and the

preservation of impartiality.

 10 A-4357-15T1
Reversed and remanded. We do not retain jurisdiction.

 11 A-4357-15T1